# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SEAN P. TATE,

                Plaintiff,

       v.                                              Case No. 09-CV-169

WARDEN LARRY JENKINS, TONY O'BRIEN,
CHAD ENGEBREGTSEN, MARY HANSER,
MARK STAHL, STEVE SCHULER,
CURTISS JANSSEN, BRETT BUTEYN,
SCOT GALLIGAN, MICHAEL BENSON,
ROSIE EICKOFF, and SUSAN CRAWFORD,

                Defendants.

---

# ORDER

The plaintiff, a Wisconsin state prisoner, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983. He is proceeding *in forma pauperis* on the following claims: (1) retaliation for writing a grievance to government officials about prison conditions and staff conduct, including writing false conduct reports; (2) conspiracy to approve and submit false documentation in an official proceeding and to administrative personnel to deprive plaintiff of his right to due process; (3) conspiracy to deprive plaintiff of his right to due process of law by not allowing him to present evidence in his behalf for his due process hearing and by finding him guilty of the false charges without supporting evidence; and (4) conspiracy to deprive plaintiff of his personal and legal property without cause for writing a grievance, in violation of the Wisconsin Constitution, Article I, §§ 3 and 4, and Wis. Stat. §§ 893.51, 893.52, and 893.57.

Before the court are the defendants' motion for summary judgment and the plaintiff's motion for partial summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Id.* at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves ..."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and

supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial").  "Rule 56(c) mandates the entry of summary judgment, ... upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.

## FACTUAL BACKGROUND[1]

The plaintiff has been incarcerated within Wisconsin Department of Corrections (DOC) institutions for the past fourteen years.  He was housed at the Kettle Moraine Correctional Institution (KMCI) from June 2006 until March 2007.

When an inmate is transferred to a different institution, DOC policy is that the inmate's legal property must fit in a 20x20x20 inch box (8000 cubic inches).  On June 12, 2006, the plaintiff was transferred to KMCI, and his legal property was documented as 1740 cubic inches.  At KMCI, the plaintiff was approached by inmates seeking help with prison conditions and staff misconduct.  According to the plaintiff, inmates had become frustrated with the Inmate Complaint Review System (ICRS) complaint examiner, who continued to dismiss meritorious complaints concerning various abuses and staff misconduct.

---

[1] Relevant, material facts are taken from the Defendants' Proposed Findings of Fact and from the Plaintiff's Proposed Findings of Fact.  Proposed facts and responses to proposed facts that do not cite to evidentiary material that would be admissible in evidence, *see* Fed. R. Civ. P. 56(e), are not included in this section.

On December 31, 2006, the plaintiff wrote a letter to Wisconsin Governor Jim Doyle, United States Congresswoman Gwen Moore, Wisconsin Senator Lena Taylor, and DOC Secretary Matthew Frank complaining of prison conditions, staff misconduct, concerns of racism, and illegal confiscation of legal property at KMCI. (Pl. Exh. 2.) Congresswoman Moore referred the letter to defendant DOC Executive Assistant Susan Crawford, who forwarded it to defendant KMCI Warden Larry Jenkins. Upon receipt of a copy of the letter on December 31, 2006, Warden Jenkins asked defendant Captain Chad Engebregtsen to conduct an informal investigation regarding the concerns raised in the plaintiff's letter.

On January 28, 2007, the plaintiff filed a group offender complaint concerning the ICRS's failure to address offender complaints regarding prison conditions. All inmates that joined in the group complaint waived their confidentiality to allow the plaintiff to obtain copies of their ICRS complaints to be used as evidence.

Captain Engebregtsen interviewed the plaintiff on February 1, 2007. According to Engebregtsen, during the interview, the plaintiff stated that the allegations of "racial operational agenda" and the destruction of inmate property in Unit 7 were not witnessed by him, that this information came from other inmates in the unit and from his cell mate, and that he did not have any direct knowledge that any correctional staff took his legal property. Captain Engebregtsen informed Warden Jenkins of what the plaintiff stated during the interview.

The plaintiff disputes Captain Engebregtsen's averments concerning what was said during the interview. According to the plaintiff, Engebregtsen confronted him in a hostile and threatening manner, and told him that he put a target on his back by writing the grievance trying to help other inmates. The plaintiff avers that he told Engebregtsen the names of the inmates that he could talk to that were mentioned in the grievance who supported the claims made therein. The plaintiff also avers that he "told Engebregtsen that the officers responsible for the missing files are the officers that packed, received, and in charge of storing the legal property, who were Officer[s] Huck, Stahl, and Benson, as staff are the only persons that have keys to inmate lockers, so the only persons that could take the files are those who packed, received and stored the property. And because an inmate is in segregation at the time his property is packed and shipped, those who signed the property sheet are responsible." (Pl. Declar. ¶ 16.) The plaintiff also denies making any of the statements alleged by the defendants.

On February 5, 2007, defendant Engebregtsen issued the plaintiff Conduct Report 1823119, charging him with Lying about Staff[2] and Disruptive Conduct,[3] based on the December 31, 2006, letter. The following Description of Incident is included in the Conduct Report:

---

[2] **DOC 303.271 Lying about staff.** Any inmate who makes a false written or oral statement about a staff member which may affect the integrity, safety or security of the institution or staff, and makes that false statement outside the complaint review system is guilty of an offense.

[3] **DOC 303.28 Disruptive conduct.** Any inmate who engages in, causes or provokes disruptive conduct is guilty of an offense. "Disruptive conduct" includes physically resisting a staff member, or overt behavior which is loud, offensive or vulgar.

On 1-23-07 I was assigned an investigation into a letter that was sent to Jim Doyle (Governor), Gwendolyn Moore (US Senator) [sic], Lena Taylor (Senator), and Matthew Frank (DOC Secretary). The letter came from Inmate Tate, Sean #291459. In the letter Inmate Tate made statement[s] such as "these files were intentionally taken by KMCI staff to stop Mr. Tate pursuit of his legal constitutional rights that were violated by staff. KMCI has racial operational agenda for African American males who find themselves sent here in retaliatory transfers, KMCI also subjects inmates to being called racial empath [sic] and verbal abuse by Officer Sgt. Immel, in which he has called inmates nigger, destroyed inmates property, intentionally provokes African American males on his Unit 7 to send them to the hole segregation. The Department itself has paid no attention to Warden Jenkins created Conditions of Confinement for African American inmates, nor of the Ku Klux Klan type of activities at KMCI. One of the reasons that this Officer has not been dealt with accordingly, the WDOC work rules of prohibited conduct, is that he is a Union Steward for the State Employees Local 162 or 163, and holds power and authority. Staff responsible for the taking of Mr. Tate's property are Michael M. Huck, because he allegedly packed Mr. Tate's property; Officer CO II Stahol, who received the property on 3rd shift, finding that this Sgt. Stahol was responsible for the intentional taking and destroying of inmate's personal property when they were confined in segregation, Unit 14." The allegations were investigated. I interviewed Tate on 2-01-07 at 3:45 pm about his allegations. During the interview Inmate Tate admitted to this investigator that he did not have any factual information that Sgt. Huck or Officer Stahl took his files. Inmate Tate also stated that the allegations of "racial operational agenda" and the destruction of inmates' property in Unit 7 were not witnessed by him. Inmate Tate stated that this information came from other inmates in the unit and his cellie at this time. All the allegations that Inmate Tate has made in the letter were based on other inmate's complaints or what he has heard from other inmates. The issue about Inmate Tate's files taken out of his property was an investigation prior to this investigation and was found to be inconclusive. The files were not located and there was no proof that staff had interfered with Inmate Tate's property. There is no proof the files existed. Due to the time spent investigating the false allegations and Inmate Tate's own admission that allegations were not based on factual information he is being charged with violation 303.27 (lying about staff) and 303.28 (disruptive conduct).

(Pl. Ex. 7.)  On February 6, 2007, defendant Captain Scott Galligan signed off and allowed Conduct Report 1823119 to proceed.

In a letter dated February 12, 2007, Warden Jenkins wrote to the plaintiff explaining that the investigation had been concluded and that his allegations would be handled through due process.  The letter states:

> Your letter addressed to Governor Doyle, Senator Moore, Senator Taylor and DOC Secretary Frank has been referred to me for response. In your letter you allege racial discrimination and illegal confiscation of your legal documents at Kettle Moraine Correctional Institution (KMCI).
>
> First, let me assure you that all complaints of staff misconduct are taken very seriously. A thorough investigation was conducted regarding your allegations.  You were interviewed by Captain Engebregtsen on February 1, 2007.  During this interview you admitted to making false allegations about KMCI staff members and that you based your statements on hearsay from fellow inmates.  You could provide no factual information to support any of your allegations of racism.
>
> Second, your letter states that KMCI staff intentionally took a number of your legal documents from your property while you were in the segregation housing unit.  This complaint was investigated by Lieutenant Zank on December 31, 2006.  You were unable to provide any evidence that would support the loss of legal property.
>
> Your third complaint is that you feel the KMCI segregation law library is inadequate.  After consulting with the KMCI librarian, Mr. Reedy, it was determined that the KMCI law library currently exceeds requirements.  Additionally, an extensive electronic law library will be established at KMCI within the next few months.
>
> Finally, you state that you were found guilty of DOC 303.17 Fighting and DOC 303.28 Disruptive Conduct because of your race.  You were given a full due process hearing on December 13, 2006.  You were found guilty of these violations based on the facts of the conduct report alone. You received 30 days disciplinary separation. The decision was upheld on appeal.

> I would like to remind you that it is your responsibility to exhaust all institution remedies before taking grievances outside of the institution. You are also advised to confine you complaints to relevant facts.

(Pl. Ex. 22.)

On February 16, 2007, Conduct Report 1823119 was heard. Defendant DOC Program Support Supervisor Mary Hanser was the plaintiff's advocate at this hearing. As the plaintiff's advocate, defendant Hanser discussed whether he would waive his due process rights, meaning if he disputed something in the ticket and wanted witnesses called. Questions were submitted for staff, the questions were reviewed by defendant Security Director Steve Schueler, and he determined what questions were allowed. Hanser assisted the plaintiff with his requests for witnesses and obtaining responses to his questions for Captain Engebregtsen.[4] Hanser emailed the plaintiff's questions to Captain Engebregtsen, who was called to testify at the hearing. Defendant Schueler approves the witnesses that are able to attend a due process hearing. Inmates are allowed to have two witnesses. The plaintiff requested to have six present. Schueler approved the top two inmate witnesses that the plaintiff requested and also approved Captain Engebregtsen to attend as witness as the author of Conduct Report 1823119. Schueler disapproved the one additional inmate and two staff members. The two staff members had no involvement with the

---

[4] The plaintiff disputes this and avers that defendant Hanser failed to assist him with obtaining the witnesses, by failing to fill out the witness form completely so that additional witnesses could be obtained to get responses to his questions. (Pl. Declar. ¶¶ 31-38).

plaintiff and his conduct report so they were irrelevant and the additional inmate was disapproved because the plaintiff met his limit of two.

On February 16, 2007, defendant Captain Tony O'Brien found the plaintiff guilty of Conduct Report 1823119 and imposed a disposition of four days adjustment segregation and 180 days of program segregation. Captain O'Brien's Reason for Decision, from the Disciplinary Hearing, Reasons for Decision and Evidence Relied On, states:

> Hearing officer finds it is more likely than not this inmate committed the act. Hearing Officer evaluated all the evidence and reached its conclusion that the statements in the conduct report are correct. Hearing Officer finds the conduct report to be credible, since the staff member writing the report has no reason to fabricate the information set forth. Hearing Officer finds the inmate's statement to be less credible since it appears to be self-serving and an attempt to avoid disciplinary action. Hearing Officer notes that a staff advocate was assigned and that there is no known conflict of interest. Staff advocate was present during hearing. I believe it more likely than not that inmate Tate did author a letter to several people outside the Institution claiming that KMCI and Warden Jenkins are discriminating against inmates of African American descent. I believe it more likely than not that the inmate has no foundation for this claim. The inmate targeted 1 staff member and had witnesses testify that the staff is discriminating against them. However neither witness could give factual testimony that the staff actually did do anything that was discriminatory to the inmates. The inmate does not provide facts to support his claim that the institution is being run like the Ku Klux Klan. I have also noted the objection by the inmate not being allowed to have more than 2 witnesses. Per DOC 303.81 inmate are only allowed to call 2 witnesses. The inmate also submitted as part of his testimony affidavits and exhibits that do not pertain to this conduct report.

(Pl. Exh. 26.)

The plaintiff filed an appeal from Conduct Report No. 1823119 which was received in Warden Jenkins's office on February 27, 2009. The appeal decision modified the sentence to 120 days disciplinary separation and a referral to the Program Review Committee (PRC). Referral to the PRC is done to have the inmate's custody level reviewed but it does not mean that the custody level will be increased.

Defendant Rosie Eickoff is an Offender Classification Specialist for the Bureau of Classification & Movement at KMCI. Her duties include reviewing inmates' custody and security level placements based on facts given before the PRC. On February 16, 2007, Eickoff recommended maximum security placement for the plaintiff as a result of not being able to adjust to medium custody based on the facts given and his conduct record, including Conduct Report 1823119.

According to the defendants, on February 19, 2007, defendant Correctional Officer Michael Benson went into the plaintiff's property storage area to retrieve items that he had requested and decided to check the limits as it appeared that he may have been over the limit of legal property allowed. The plaintiff had three tubs of legal property which weighed about 75 pounds each and showed to be over the limit of legal property that an inmate may have. Defendant Benson determined that the plaintiff was in excess of the allowable amount of legal property and issued the plaintiff a conduct report. The plaintiff's hearing for Conduct Report 1824974 was on February 23, 2007, and, following the disposition of the conduct report on the

same day, Benson was ordered to return the property and he avers that he did so. Benson avers that he did not interfere with any of the plaintiff's incoming or outgoing mail, or attempt to restrict his ability to file grievances or appeals, nor did he conspire with staff to do same.

According to the plaintiff, defendant Benson's statements are false because the plaintiff never made a request for legal property and, therefore, Benson's reason for going into his property in the first place was in retaliation for plaintiff writing a grievance against him and Officer Stahl. The plaintiff avers that he never received any of his property, the disposition stated that the plaintiff was to send out excess legal materials, and thus, Benson lied.

## DISCUSSION

As an initial matter, the plaintiff asserts that he voluntarily dismisses defendant Curtiss Janssen, and Janssen will, therefore, be dismissed. (*See* Pl. Br. at 29.)

The defendants contend that the plaintiff's unsubstantiated and unfounded allegations cannot support conspiracy and retaliation claims as to Conduct Reports 1823119 and 1824974. The plaintiff contends that he has proven a retaliation claim because he has established that: (1) he was exercising a constitutionally protected right when he wrote his December 31, 2006 grievance to government officials concerning prison conditions and staff misconduct; (2) prison officials took adverse action against him for filing his December 31, 2006 grievance to prison officials; and (3) the adverse action was motivated in part as a response to the plaintiff's

constitutionally protected action. He also contends that the defendants are not entitled to summary judgment because there are material facts in dispute. Specifically, the plaintiff contends that there are the following material factual disputes: (1) as to what the plaintiff told Captain Engebregtsen on February 1, 2007, during the interview; (2) that the plaintiff could provide no factual information to support any allegation of racism; and (3) that the plaintiff lied.

## I.    RETALIATION

To prevail on a First Amendment retaliation claim, the plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations and internal quotations omitted).

### A.    Conduct Report 1823119

#### 1.    Protected Conduct

The plaintiff contends that the defendants waived any argument they had as to whether the plaintiff's December 31, 2006 letter is activity protected by the First Amendment because the defendants did not include such argument in their motion for summary judgment. The defendants' failure to raise this issue in its opening brief could justify summary rejection of its argument in its reply brief that the letter was not protected conduct. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.

1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B--a ground the movant might have presented but did not"), *superseded on other grounds by statute, Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119-20 (7th Cir. 1992). However, the plaintiff's partial summary judgment motion opening brief argues that the letter was protected conduct, and the defendants, in their joint response to the plaintiff's motion and reply to their own, dispute this. Despite the defendants' failure to include the protected conduct argument in their opening brief, because the plaintiff raised the issue and the defendants responded to it, this case is not as straight-forward as *Malhotra*, *supra*. Thus, the court will address the merits of the argument.

It is well settled that a prisoner has a First Amendment right to make grievances about conditions of confinement. *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (citing *Hasan v. United States Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005)). In this case, the plaintiff wrote a letter complaining about prison conditions at KMCI. Although his letter was not a formal ICRS grievance, an investigation was conducted in response to the letter. Captain Engebregtsen interviewed the plaintiff, and Warden Jenkins responded to the plaintiff stating that his complaints were taken seriously and that a thorough investigation was conducted. However, the defendants contend that the plaintiff's December 31, 2006 letter is not First Amendment protected activity because making false or supported allegations regarding widespread staff racism and criminal misconduct is not

protected speech and because the violation of a prison regulation removes First Amendment protection.

The question of whether a prisoner's speech is protected by the First Amendment is governed by the standard established in *Turner v. Safley*, 482 U.S. 78, 89 (1987), under which a prison regulation that impinges on prisoners' constitutional rights is valid if "reasonably related to legitimate penological interests." *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010). In applying the *Turner* standard to a First Amendment retaliation claim, the court examines whether the prisoner engaged in speech in a manner consistent with legitimate penological interests. *Watkins*, 599 F.3d at 794-95 (citing *Bridges*, 557 F.3d at 551). In *Turner*, where the Supreme Court examined a prison regulation limiting inmate-to-inmate correspondence, the Court discussed several relevant factors: whether a "valid, rational connection" exists between the regulation and the legitimate interest put forth to justify it; whether "alternative means of exercising the right . . . remain open to prison inmates"; "the impact accommodation of the asserted constitutional right" will have on prison officials and inmates; and the availability of "obvious, easy alternatives" to the challenged regulation. *Watkins*, 599 F.3d at 796-97 (quoting *Turner*, 482 U.S. at 89-90). Although *Turner* dealt with a direct challenge to a prison regulation rather than a retaliation claim, some or all of its factors may be relevant to the question of whether the plaintiff's letter is activity protected by the First Amendment. *Id.* at 797.

In this case, looking at "the impact" of accommodating the plaintiff's speech factor, the plaintiff's approach was not confrontational in that he wrote a letter and followed up the letter with a grievance. However, his letter did advocate on behalf of other inmates, which can be disruptive. *Id.* (citing *Shaw v. Murphy*, 532 U.S. 223, 231 (2001) (observing that the advocacy of inmate law clerks, though important in many contexts, often undermine prison discipline). The letter format of the plaintiff's grievance weighs in his favor looking at the "alternative means" factor, because a written complaint is preferable, and less disruptive, than verbal criticism. *Id.*

It is undisputed that the plaintiff received a conduct report and was found guilty of violating prison regulations based on the content of the letter. If the plaintiff lied about staff in his letter, then it is not conduct protected by the First Amendment. *See Watkins*, 599 F.3d at 799 (citing *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (concluding that speech found to be false and unprotected under a valid prison regulation was unprotected)); *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc) ("[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one of a First Amendment retaliation claim"). However, the plaintiff disputes the defendants' charge that he lied about staff. He claims that the defendants conducted a sham investigation into the contents of the letter and filed the conduct report against him in retaliation for the complaints set forth therein. Moreover, the plaintiff has submitted evidence by which a reasonable factfinder could conclude that he did not

lie about staff. *See* Pl.'s Exs. 2, 19, 27, 28, 53, 55; *see also*, Declaration of Sean P. Tate.)

Based on the foregoing, the court concludes that the plaintiff's December 31, 2006 letter is activity protected by the First Amendment.

### 2. Adverse Action

It is undisputed that the plaintiff received Conduct Report 1823119, and the resulting 120-day disciplinary separation sentence and referral to the PRC, based on his December 31, 2006 letter. In addition, the plaintiff was transferred to a maximum security prison based on his conduct record, including Conduct Report 1823119. These adverse actions, while not necessarily actionable in and of themselves, are actionable if taken in retaliation for the exercise of a constitutionally protected right. *Bridges*, 557 F.3d at 552 (citations omitted).

### 3. Substantial or Motivating Factor

To prove retaliation, the plaintiff must show that his December 31, 2006 letter was "at least a motivating factor" in any retaliatory action taken by the prison. *See Bridges*, 557 F.3d at 546. If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct. *Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

"A motivating factor is a factor that weighs in the defendant's decision to take the action complained of – in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Hasan*, 400 F.3d at 1006 (citations omitted).  The prisoner may demonstrate improper motive by pointing to evidence suggesting a retaliatory motive, such as suspicious timing or statements by the defendants suggesting that they were bothered by the protected conduct. *Mullin v. Gettinger*, 450 F.3d 280, 285 (7th Cir. 2006); *Culver v. Gorman & Co.*, 416 F.3d 540, 545-50 (7th Cir. 2005).  However, at summary judgment "mere temporal proximity is not enough to establish a genuine issue of material fact." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (internal quotation omitted).

The defendants contend that the plaintiff's claim must fail because they present uncontradicted evidence that they punished him not because he tried to exercise free speech but because his accusations were categorically untrue and based on hearsay.  They further contend that since punishment for misconduct was their true motive, and an appropriate one at that, there was no retaliation.  According to the defendants, the prison authorities investigated the plaintiff's accusations, which they found baseless, and then, and only then, was he punished for lying about the staff.  The defendants point to the informal investigation conducted by Captain Engebregtsen.  The defendants contend that the plaintiff admitted to fabricating allegations from his letter because he admitted the allegations were not based on personal knowledge.

The plaintiff denies that he lied in his letter. According to the plaintiff, he did not tell Engebregtsen that his letter was based on any comments to him from other inmates, but rather was based on written inmate complaints filed to the ICRS pursuant to Wis. Admin. Code 310, and that he had provided waivers from 64 inmates to allow access to their ICRS grievances. He contends that Captain Engebregtsen's questioning did not constitute an investigation, because when asked during discovery which inmates he interviewed he could not recall who he talked to or if he did at all, and because he admitted that he did not review any inmate complaints concerning the staff misconduct. The plaintiff avers that Engebregtsen told him that he had a target on his back because he wrote the letter and that he should not have done so. The letter also complained about the plaintiff's prior missing legal property and he asserts that, while it would be virtually impossible for him to have first-hand knowledge of a guard destroying such property, he narrowed his allegations down to potential segregation guards who had access to such property and concluded that they could have been the only ones to know of its whereabouts.

The plaintiff has set forth evidence that retaliation was a motivating factor in the defendants' adverse action against him. The parties dispute whether the plaintiff actually violated the Wisconsin Administrative Code regulations upon which Conduct Report 1823119 was based. *See Hale v. Scott*, 371 F.3d 917, 920 (7th Cir. 2004) ("[i]f the prisoner can show that he did not violate the regulation, then he may have"

a retaliation claim). The defendants have not shown that the same actions would have occurred in the absence of the protected conduct. In sum, there is a fact issue as to whether the defendants had a retaliatory motive in the adverse actions taken against the plaintiff related to Conduct Report 1823119 and the defendants have not shown that the plaintiff would have received the same treatment absent the protected conduct. Thus, this claim survives.

### B. Conduct Report 1824974

The plaintiff contends that there is a material factual dispute regarding defendant Benson's reasons for writing a conduct report for excess legal property. However, it is undisputed that the plaintiff's legal property was above the amount allowed under DOC policy. He was, therefore, punished for a legitimate, admitted infraction. Thus, even if the plaintiff had shown that Benson had an improper motive in checking the plaintiff's property storage, the amount of property he had violated the rules. The defendants have, therefore, demonstrated that they would have taken the same actions related to Conduct Report 1824974 even if the plaintiff did not file the letter, and this claim will be dismissed.

### II. DUE PROCESS CLAIM

To the extent that the plaintiff claims he was denied due process based on his disciplinary hearings, his claims fail. The disciplinary hearing, even if fabricated, implicated no federally protected liberty interest. *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). The punishments the plaintiff suffered because of his

disciplinary conviction (120 days disciplinary separation, referral to the PRC, and transfer to maximum security prison) raise no due process concerns. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (disciplinary segregation); *Thomas v. Ramos*, 130 F.3d 754, 761-62 & n.8 (7th Cir. 1997) (temporary segregation and demotion to C-grade status); *Cochran v. Buss*, 381 F.3d 637, 641 (7th Cir. 2004) (transfer). The plaintiff's due process claims will, therefore, be dismissed.

### III. STATE LAW CLAIMS

These claims were not addressed at summary judgment and, therefore, the claims survive.

### IV. CONCLUSION

In sum, the plaintiff's retaliation and conspiracy to retaliate claims related to Conduct Report 1823119 survive summary judgment, as do the plaintiff's state law claims. The remaining claims are dismissed.

Accordingly,

**IT IS ORDERED** that defendant Curtiss Janssen be and the same is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket #38) be and the same is hereby **GRANTED IN PART AND DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that the plaintiff's motion for partial summary judgment (Docket #75) be and the same is hereby **DENIED**.

**IT IS ALSO ORDERED** that the remaining parties shall appear before United States Magistrate Judge Patricia J. Gorence at such time she shall designate, for mediation with the attorneys they expect to try this case, together with such person or persons, other than legal counsel, with final settlement authority.

**IT IS FURTHER ORDERED** that the parties shall mediate their dispute in good faith.

**IT IS ALSO ORDERED** that the parties shall not file or reveal to the court or its employees any discussions or facts disclosed during mediation, without the proper consent of the adverse party.

At the conclusion of the mediation, Judge Gorence shall advise the court whether mediation has been successful and shall not otherwise reveal any information concerning the case.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge